UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FARAH NOERAND,

    *Plaintiff*,

v.

BETSY DEVOS, in her official capacity as Secretary of the United States Department of Education,

And

THE UNITED STATES DEPARTMENT OF EDUCATION

    *Defendants*.

No.

## VERIFIED COMPLAINT

### INTRODUCTION

1. Plaintiff Farah Noerand, a Haitian student at Bunker Hill Community College in Charleston, Massachusetts ("Farah" or "Plaintiff"), brings this lawsuit to stop the U.S. Department of Education (the "Department") from placing arbitrary eligibility restrictions on emergency assistance available under the Coronavirus Aid, Relief, and Economic Security Act[1] (the "CARES Act" or "Act") for distribution by institutions of higher education to students ("Higher Education Emergency Relief Fund Assistance" or "HEERF Assistance").

2. Despite Congress's clear mandate that the Department disperse aid to higher education institutions to make "emergency financial aid grants to students," with no restriction on student eligibility, the Department has implemented its own unlawful policy preferences and

---

[1] 116 P.L. 136, 134 Stat. 281, March 27, 2020.

limited HEERF assistance to students who qualify for financial aid under Title IV of the Higher Education Act ("Title IV").  In doing so, the Department has excluded hundreds of thousands of students who, like Plaintiff, do not qualify for Title IV due to their immigration status, including students enrolled in the Deferred Action for Childhood Arrivals ("DACA") program, students with pending asylum applications, students who have been granted a U Visa as victims of criminal activity, students with Withholding of Removal status, students with Temporary Protected Status ("TPS"), and undocumented students.  These students, many of who are among the most vulnerable and in need of relief, are now ineligible to receive assistance from their colleges and universities during an ongoing national health crisis.

3. To arrive at its chosen policy position, the Department has dithered, reversed itself, and ultimately manufactured a statutory ambiguity where none exists. The CARES Act is clear in its command that the Department aid "students," not "students who are eligible for Title IV."  No provision of the CARES Act restricts HEERF assistance to Title IV eligible students, incorporates Title IV's eligibility requirements into HEERF assistance, imposes restrictions on the types of students eligible for aid, or confers discretion on the Department to set eligibility conditions based on Title IV.  Because the Department's eligibility restrictions violate Congress' clear command in the CARES Act, they must be set aside under the Administrative Procedure Act as arbitrary and capricious and in excess of statutory authority.

4. The Department's restrictions irreparably harm Plaintiff at a time when she needs help the most.  Like many, Plaintiff lost her job as a result of Massachusetts' stay-at-home order for non-essential workers. She now faces new and unexpected costs due to the sudden shift to online learning and the closure of her school's campus, including the cost of purchasing a working laptop, paying for internet access, and purchasing household items and food normally available

through her school's food pantry at low or no cost. Plaintiff's inability to afford a functioning laptop or reliable internet access severely interferes with her opportunity to obtain an education on equal terms with her classmates.

5. Because Plaintiffs' needs are acute and immediate, and the Department's actions are incompatible with the plain language of the CARES Act, this Court should join at least two other federal district courts in setting the Department's actions aside immediately.

## JURISDICTION AND VENUE

6. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under federal law.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because Plaintiff resides in this district and this action seeks relief against a federal agency and its official acting in her official capacity.

## PARTIES

8. Plaintiff Farah Noerand is a resident of Charleston, Massachusetts. She is a student at Bunker Hill Community College, and is currently enrolled in Bunker Hill's summer session from June 1, 2020 through July 13, 2020. She holds Temporary Protected Status as a Haitian national, and has been lawfully present in the U.S. for almost a decade.

9. Defendant Department of Education is an executive department of the United States pursuant to 5 U.S.C. § 101, a federal agency within the meaning of 28 U.S.C. § 2671, and engages in agency action within the meaning of 5 U.S.C. § 702. The Department is responsible for administering the HEERF.

10. Defendant Betsy DeVos is the Secretary of the Department of Education. She is sued in her official capacity pursuant to 5 U.S.C. § 702. Secretary DeVos is required to distribute HEERF Assistance in accordance with the CARES Act.

## FACTUAL ALLEGATIONS

**I.    Congress Establishes the HEERF**

11. The CARES Act, the third and largest stimulus package passed by Congress to address the economic fallout from the COVID-19 pandemic, was signed into law on March 27, 2020. The Act provides over $2 trillion in federal aid to individuals, businesses, and state and local governments.

12. The Act allocates $14 billion to a Higher Education Emergency Relief Fund ("HEERF"), approximately $12.56 billion of which the Department must disperse to higher education institutions under a precise formula set out by Congress. *See* CARES Act, § 18004(a)(1). Specifically, funding is apportioned to each higher education institution as follows: 75 percent based on the institution's relative share of the full-time equivalent (FTE) enrollment of Federal Pell Grant recipients, and 25 percent based the institution's relative share of FTE enrollment of all other students, with both categories excluding students who, prior to the pandemic, were only enrolled in online learning. *Id*. The latter part of the formula—allocating 25 percent of funds based on an institution's FTE enrollment of all non-Pell Grant students—includes *all* non-Pell Grant students, including students not eligible for financial aid under Title IV.

13. Once funding has been apportioned, the CARES Act broadly authorizes higher education institutions to use HEERF grants "to cover any costs associated with significant changes to the delivery of instruction due to the coronavirus" subject to two limitations. *Id.* at § 18004(c). First, the funds cannot be used for "payments to contracts for the provision of pre-enrollment recruitment activities; endowments; or capital outlays associated with facilities related to athletics,

sectarian instruction, or religious worship." *Id.*  Second, at least 50 percent of each institution's allocation must be used to provide "emergency financial aid grants to students for expenses related to the disruption of campus operations due to coronavirus (including eligible expenses under a student's cost of attendance, such as food, housing, course materials, technology, health care, and child care)" (referred to here as <u>HEERF Assistance</u>).  *Id.*

14. Beyond these two restrictions, the CARES Act does not impose any limitations on how institutions allocate HEERF assistance.  It also does not impose any eligibility limitations on HEERF assistance for students.  This is no accident.  When Congress intended to set specific eligibility criteria in other CARES Act programs, it spoke clearly.  *See, e.g.* CARES Act at § 6428(d) (excluding "nonresident alien[s]" and other enumerated individuals from receiving rebates). Congress purposefully distinguished HEERF grants from other student funding sources in the CARES Act, which *are* subject to Title IV eligibility requirements.  *See, e.g., id.* at § 3504 (permitting the use of an institution's allotment under Title IV to issue emergency financial aid grants to students); § 3505 (authorizing higher education institutions to use Title IV funds to make payments to affected work-study students).

## II.   The Department Issues Conflicting Interpretations of HEERF Assistance Eligibility

### A.   *The April 9, 2020 Guidance*

15. Initially, the Department acknowledged that HEERF assistance was available to all students under the CARES Act.  On April 9, 2020, the Department publicized the availability of $12.56 billion in HEERF funds, including $6.28 billion in HEERF assistance to students,[2] and

---

[2] Secretary DeVos Rapidly Delivers More Than $6 Billion in Emergency Cash Grants for College Students Impacted by Coronavirus Outbreak, U.S. Dep't of Educ. (April 9, 2020), https://www.ed.gov/news/press-releases/secretary-devos-rapidly-delivers-more-6-billion-emergency-cash-grants-college-students-impacted-coronavirus-outbreak.

announced grant allocations to individual institutions based on the formula set forth by Congress in § 18004(a)(1) of the Act.[3] When calculating allocations based on the FTE enrollment of non-Pell Grant students, the Department correctly used enrollment data that included *all* full-time equivalent students not exclusively enrolled in distance learning prior to COVID. This allocation included students ineligible for Title IV.[4]

16. The same day as these announcements, Secretary DeVos published a letter to colleges and universities emphasizing each institution's broad discretion to allocate HEERF funds, stating that "each institution may develop its own system and process for determining how to allocate these funds, which may include distributing the funds to ***all*** students or only to students who demonstrate significant need."[5] Relying on the text of the CARES Act itself, Secretary DeVos acknowledged that "the only statutory requirement is that the funds be used to cover expenses related to the disruption of campus operations due to coronavirus (including eligible expenses under a student's cost of attendance, such as food, housing, course materials, technology, health care, and child care)." *Id.*

17. Secretary DeVos's letter went on to state that each higher education institution was required complete a certification form acknowledging that the institution would comply with the

---

[3] Allocations for Section 18004(a)(1) of the CARES Act, https://www2.ed.gov/about/offices/list/ope/allocationstableinstitutionalportion.pdf (last accessed July 1, 2020).

[4] *See* Methodology for Calculating Allocations per Section 18004(a)(1) of the CARES Act, U.S. Dep't of Educ., https://www2.ed.gov/about/offices/list/ope/heerf90percentformulaallocationexplanation.pdf (identifying use of data from Integrated Postsecondary Education Data System (IPEDS) system) (last accessed July 1, 2020); IPEDS Data Explorer, National Center for Education Statistics, https://nces.ed.gov/ipeds/Search?query=&query2=&resultType=all&page=1&sortBy=date_desc&overlayTableId=25211 (aggregate IPEDS data, including category for "nonresident alien" students) (last accessed July 1, 2020).

[5] Secretary DeVos Letter to College and University Presidents, U.S. Dep't of Educ. (April 9, 2020), https://www2.ed.gov/about/offices/list/ope/caresactgrantfundingcoverletterfinal.pdf (emphasis added).

terms and conditions of funding before it could receive HEERF funds. *Id.* The form certification, also made available April 9, 2020, acknowledged that the "Secretary does not consider these individual emergency financial aid grants to constitute Federal financial aid under Title IV."[6]

### B.   The April 21, 2020 Guidance

18.   On April 21, 2020, the Department abruptly reversed its position on HEERF student eligibility. In a document titled "Frequently Asked Questions about the Emergency Financial Aid Grants to Students under Section 18004 of the Coronavirus Aid, Relief, and Economic Security (CARES) Act," published on the Department's website on April 21, 2020 ("FAQ Guidance"), the Department stated that "[o]nly students who are or could be eligible to participate in programs under Section 484 in Title IV of the Higher Education Act of 1965, as amended ("HEA"), may receive emergency financial aid grants." *Id.* at 4.  The FAQ Guidance expressly stated that only U.S. citizens or "eligible noncitizens" could receive funding. *Id.*

### III.   The Department Publishes an Interim Final Rule Restricting HEERF Assistance Eligibility in A Manner Contrary to Congress' Express Direction in the CARES Act

19.   On May 21, 2020, the Department published a statement on its website arguing that its prior FAQ Guidance "lack[ed] the force and effect of law."[7]  Despite this, the Department reiterated its position that HEERF assistance was only available to students who "are or could be eligible to participate in [Title IV] programs" and stated that it would "take further action shortly" with respect to student eligibility. *Id.*

---

[6] Recipient's Funding Certification and Agreement: Emergency Financial Aid Grants to Students under the Coronavirus Aid, Relief, and Economic Security (CARES) Act, U.S. Dep't of Educ., https://www2.ed.gov/about/offices/list/ope/heerfstudentscertificationagreement42020.pdf (last accessed July 1, 2020).

[7] CARES Act: Higher Education Emergency Relief Fund—Updated Statement 5/21/2020, U.S. Dep't of Educ. (April 9, 2020), https://www2.ed.gov/about/offices/list/ope/caresact.html (last accessed July 1, 2020).

20. That "further action" took the form of an interim final rule published in the Federal Register on June 17, 2020 (the "IFR"),[8] the stated purpose of which was "to ensure taxpayer-funded coronavirus relief money… does not go to foreign nationals, non-citizens, and students who may be enrolled in ineligible education programs."[9] With the IFR, the Department included a statement from Secretary DeVos that "the CARES Act was written to help "Americans[10] recover from the coronavirus pandemic," and that "foreign nationals and most other non-citizens would not be eligible" for HEERF assistance. *Id*.

21. The IFR contains a single regulatory change: it redefines the word "student" in CARES Act § 18004 to mean only students "who are, or could be eligible" to participate in programs under Title IV. By importing Title IV eligibility into HEERF, the IFR excludes hundreds of thousands of non-citizen students from HEERF assistance, including DACA recipients, asylum applicants, Withholding of Removal grantees, U-Visas beneficiaries, and Temporary Protected Status recipients like Plaintiff.[11]

## IV. Plaintiff Attempts to Obtain Aid

### A. *Plaintiff's Background and Struggles During COVID-19*

22. A survivor of the devastating January 12, 2010 Haiti earthquake, Farah was medically evacuated from Haiti to Shriners Hospital for Children at age fourteen after she sustained severe burns in an electrical fire. In December 2011, she obtained Temporary Protected

---

[8] Eligibility of Students at Institutions of Higher Education for Funds under the Coronavirus Aid, Relief, and Economic Security (CARES) Act, 85 Fed. Reg. 36494, Department of Education, June 17, 2020.

[9] U.S. Department of Education Issues Rule to Protect American Taxpayers from Waste, Fraud, and Abuse, Ensure COVID-19 Relief Funds Get to Eligible Students, U.S. Dep't of Educ. (June 11, 2020), https://www.ed.gov/news/press-releases/us-department-education-issues-rule-protect-american-taxpayers-waste-fraud-and-abuse-ensure-covid-19-relief-funds-get-eligible-students.

[10] Plaintiff notes that some non-citizen students are eligible for Title IV and fall within Title IV's eligibility restrictions.

[11] *See* 20 U.S.C. § 1091(a)(5).

Status, which she still holds.  As such, she is ineligible for assistance under Title IV pursuant to Defendants' longstanding Title IV immigrant eligibility restrictions.

23.     Farah currently attends Bunker Hill Community College ("Bunker Hill"), a multi-campus community college serving the Greater Boston area. She has been enrolled since September 2016, and is pursuing a degree in early childhood education.  Like many college students, she has been negatively impacted by the COVID-19 crisis. As a result of Massachusetts Governor Charlie Baker's emergency stay-at-home advisory for all non-essential businesses, Farah lost her job at Charleston YWCA, where she worked with young children.  She also faces new and unexpected costs due to the closure of Bunker Hill's campus, including the cost of purchasing a functioning laptop and paying for reliable high-speed internet in order to access online classes.  Prior to the COVID-19 crisis, Farah completed her coursework on computers and internet made available to students on Bunker Hill's campus.  Farah is also incurring new out-of-pocket costs for food, household items, and sanitary products, which she previously accessed through Bunker Hill's food pantry at no or low cost.

24.     Because of the unexpected, sudden, and significant nature of these costs, Farah faces severe difficulty in covering costs for the current semester.  Having been unable to afford a working laptop, Farah has been accessing her summer courses through a combination of her phone and a malfunctioning laptop, and so has encountered difficulty in completing her summer courses. Her ability to attend classes in the fall is also in jeopardy, as Bunker Hill presently plans to conduct a "virtual campus" with "mostly remote" classes with respect to the Fall semester.[12]

---

[12] *See* BHCC Virtual Campus—Fall 2020, https://www.bhcc.edu/virtualcampus/ (last accessed July 6, 2020) ("To ensure the health and safety of all students, faculty and staff, most fall 2020 classes will be taught remotely through a few different course types.").

### B. Plaintiff Requests Assistance from Bunker Hill

25. According to its website, Bunker Hill signed and completed the required certification for HEERF assistance on April 10, 2020, anticipating receipt of around $4 million in funds. As of June 1, 2020, Bunker Hill had identified 5,830 students eligible to receive emergency financial aid grants and distributed around $2.8 million in funds to those students, stating that "[i]n order to be eligible, a student must have a valid 2019-2020 FAFSA on file."

26. On June 5, 2020, Plaintiff's attorney sent a letter to Bunker Hill requesting emergency assistance to pay for "the cost of acquiring a laptop to access remote learning, the cost of internet access, higher utility bills for completing work at home instead of campus, cost of items normally provided at the food pantry, such as free hygiene products, and low-cost food options at the school cafeteria, and other costs which are not known exactly at the present moment, such as course materials usually available on campus."

27. In response to the letter, Bunker Hill informed Plaintiff that, "Based on the guidance we have received from the Dept. Of Education, students who would not be eligible for Title IV aid are not eligible for CARES act funds."

## COUNT I
### Violation of the Administrative Procedure Act ("APA")
### (Arbitrary and Capricious Agency Action)

28. Plaintiff repeats and reasserts the allegations in the proceeding paragraphs, and incorporate them by reference.

29. The APA requires that a court "hold unlawful and set aside agency hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

30. Both the FAQ 21 Guidance and the IFR are arbitrary, capricious, and an abuse of discretion as they forbid institutions from aiding students whom Congress directed be eligible for aid by institutions of higher education.

31. The CARES Act directs that "students," not "students who are, or could be eligible to participate in programs under Title IV," be eligible for HEERF assistance; as such, the exclusion created by the Department does not accord with the plain meaning and direction of the language of the CARES Act. The CARES Act (1) does not exclude non-Title IV-eligible students, (2) explicitly does incorporate non-Title IV students in its allocation of funds, and (3) elsewhere specifies explicitly when it is referring to students eligible for Title IV and does not do so in § 18004.

32. Absent injunctive and declaratory relief suspending and vacating the FAQ Guidance and IFR, plaintiff will continue to be immediately, continuously, and irreparably by Defendants' illegal actions.

## COUNT II
### Violation of the Administrative Procedure Act
### (Agency Action in Excess of Statutory Authority)

33. Plaintiff repeats and reasserts the allegations in the proceeding paragraphs, and incorporate them by reference.

34. The APA requires that a court "hold unlawful and set aside agency action, findings, and conclusions found to be … in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A).

35. As a federal agency, the Department does not have authority to interpret federal statutes beyond the confines of the authority granted by the statutory text.

36. Congress did not grant the Department authority to condition student eligibility for HEERF assistance under CARES Act § 18004 on Title IV eligibility. The CARES Act directs, in

simple terms, that aid be available to "students," which CARES Act § 18004 states includes full-time equivalent students who are not exclusively enrolled in distance learning.

37. Both the Department's April 21, 2020 FAQ Guidance and IFR are unauthorized by and contrary to CARES Act § 18004(c), and are therefore is in excess of the Department's statutory authority.

38. Moreover, in interpreting federal statutes, courts have long required that conditions attached to federal funds allocated to institutions or individuals must be stated unambiguously by Congress. In fashioning its own unlawful eligibility condition based upon its policy preferences, the Department has overstepped its constitutional role to implement Congress' wishes, not its own.

39. For this reason too, the April 21, 2020 FAQ Guidance and IFR are contrary to law, and must be set aside as ultra vires.

40. Absent injunctive and declaratory relief suspending and vacating the April 21 FAQ Guidance and IFR, plaintiff will be continue to be immediately, continuously, and irreparably by Defendants' illegal actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and grant the following relief:

a. Set aside the Title IV eligibility requirements set forth in the April 21, 2020 FAQ Guidance;

b. Set aside the HEERF Interim Final Rule;

c. Permanently enjoin the Defendants from imposing and enforcing eligibility requirements based on Title IV eligibility on HEERF Assistance in violation of the CARES Act;

d. Grant such other relief as the Court may deem just and proper.

## **VERIFICATION**

I, Farah Noerand, verify under penalty of perjury that the allegations herein are true or, if stated on information and belief, are believed to be true.

Dated: 7/6/20

*Farah Noerand*
Farah Noerand

Dated: July 2, 2020

Respectfully submitted,

FARAH NOERAND

By her attorneys,

/s/ Rachel C. Hutchinson
Dean Richlin (Bar Roll No. 419200)
Jeremy W. Meisinger (Bar Roll No. 688283)
Rachel C. Hutchinson (Bar Roll No. 696739)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
Telephone: (617) 832-1000
Facsimile: (617) 832-7000